**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MELISSA FLENTROY-TENNANT,

        Plaintiff,

vs.                                          CASE NO. 3:07-cv-101-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is REVERSED and REMANDED**.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

## I. Procedural History

On June 14, 1999, Plaintiff filed an application for Disability Insurance Benefits ("DIB") (Tr. 76-78). Plaintiff's applications were denied initially and upon reconsideration (Tr. 58-59 and 62-63). Pursuant to Plaintiff's request, an administrative hearing was conducted on June 15, 2000, in Jacksonville, Florida, before Administrative Law Judge ("ALJ") James R. Russell (Tr. 35-53). By decision dated November 9, 2000, the ALJ denied Plaintiff's claim, finding her not disabled by virtue of the ability to perform her past relevant work as a telephone operator (Tr. 9-23).

On November 27, 2000, Plaintiff requested review of the ALJ's decision by the Appeals Council (Tr. 6). On August 29, 2001, the Appeals Council denied Plaintiff's request (Tr. 4-5). On July 30, 2001, approximately one month before the Appeals Counsel denied Plaintiff's request for reconsideration, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits (Tr. 487-88). Subsequently, Plaintiff's SSI application was denied initially and upon reconsideration (Tr. 491-93 and 496-98).

On April 15, 2002, upon motion by the Commissioner, the United States District Court, Middle District of Florida, remanded Plaintiff's claim back to the Commissioner for further proceedings (Tr. 308-09A). Additional hearings were conducted before ALJ Russell on January 21, 2003, April 23, 2003, and August 20, 2003 (Tr. 499-556). ALJ Russell subsequently denied Plaintiff's claim by decision dated March 12, 2004 (Tr. 293-307). Plaintiff requested review of the decision by the Appeals Council (Tr. 284) and on December 14, 2006, the Appeals Council issued an order refusing to assume jurisdiction (Tr. 282-83), making the ALJ's decision the final decision of the Commissioner. Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v); *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") It is a plaintiff's burden to provide the

relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. §§ 404.704, 416.912(c).

### III. Background Facts

Plaintiff was born on April 20, 1967 (Tr. 39). Plaintiff graduated from high school and has some college credit hours, but she does not have a college degree (Tr. 502-03). Additionally, Plaintiff has thirteen years of past relevant work experience as a telephone operator for Bell South and three years of past relevant work experience as an office clerk (Tr. 121).

On February 15, 1998, Plaintiff injured herself at work when she slipped and fell on a wet tile restroom floor (Tr. 42). On February 20, 1998, Plaintiff presented to Chaim Rogozinski, M.D. ("Dr. Rogozinski") with complaints of neck pain, left arm pain, and upper and lower extremity pain (Tr. 128). Physical examination revealed moderate difficulty mobilizing and painful range of motion of the cervical, thoracic, and lumbar spine (Tr. 129). Dr. Rogozinski reviewed Plaintiff's x-rays and stated there was a "reversal of cervical lordosis,[2] [but] otherwise, no fractures, dislocations, or destructive lesions [were] seen" (Tr. 130).

---

[2] "Lordosis" is defined by *Steadman's Medical Dictionary* as follows: "[G. *Lordōsis*, a bending backward]. Hollow or saddle back; an abnormal extension deformity: backward curvature; anteroposterior curvature of the spine, generally lumbar with the convexity looking anteriorly." *Steadman's Medical Dictionary*, 894 (William R. Hensyl et al. eds., Williams & Wilkins 25th ed. 1990) (1911).

Based on his physical evaluation of Plaintiff and the results of her x-rays, Dr. Rogozinski indicated Plaintiff could return to regular work duties (Tr. 130-31).[3]

On May 18, 1998, Plaintiff was referred to Arnold A. Zeal, M.D. ("Dr. Zeal") for a second opinion regarding possible surgery on her cervical spine (Tr. 163). Dr. Zeal ordered a myelogram, which was positive for a mild to moderate ventral defect upon Plaintiff's thecal sac at C5-6 with mild to moderate nerve root encroachment (Tr. 162). Additionally, the myelogram showed minimal impressions at Plaintiff's C3-4, C4-5, and C6-7 (Tr. 162).

On June 17, 1998, Dr. Zeal reviewed the results of Plaintiff's myelogram and noted Plaintiff suffered from a herniated cervical disc (Tr. 159), which was "fairly sizable" and could "certainly well explain her symptoms" (Tr. 143). On July 24, 1998, Dr. Zeal performed an anterior cervical arthrodesis and a cervical decompression and diskectomy at Plaintiff's C5-6 (Tr. 138). On April 26, 1999, approximately nine months after her surgery, Plaintiff reported to Dr. Zeal that her symptoms of pain remained unchanged (Tr. 143). On April 29, 1999, Dr. Zeal stated that, although Plaintiff continued to be uncomfortable, he had no explanation or recommendation for her and he officially discharged her from his care (Tr. 142).

---

[3] The Court notes that, although Plaintiff's x-rays, as read by Dr. Rogozinski, did not appear to show a herniated disc, Dr. Rogozinski discussed surgery options with Plaintiff related to her cervical disc herniation on April 8, 1998 (Tr. 122). The Court additionally notes that Dr. Rogozinski's notes do not account for the aforementioned inconsistency; however, it appears from the record that the x-rays Dr. Rogozinski relied upon in making his initial determination concerning Plaintiff's injury was a limited study based on limited projections and techniques (*see* Tr. 164-65).

On December 9, 1998, approximately five months after Dr. Zeal performed Plaintiff's aforementioned surgery, Plaintiff presented to Mark C. Hofmann, M.D. ("Dr. Hofmann") with complaints of constant neck pain, numbness of the left thumb, and constant mid and lower back pain (Tr. 237-39). Upon examination, Dr. Hofmann noted that Plaintiff was cooperative and did not exhibit any exaggerated pain behaviors (Tr. 238). Dr. Hofmann stated Plaintiff displayed reduced range of motion of the cervical spine with muscle spasm and pain upon palpation (Tr. 238).

Other pertinent findings by Dr. Hofmann included sensation loss over her left thumb and muscle spasm over her lumbosacral paraspinal muscles (Tr. 239). Dr. Hofmann diagnosed Plaintiff with chronic neck pain status-post C5-6 diskectomy, left C6 radiculopathy, and chronic lumbosacral strain (Tr. 239). Plaintiff was instructed not to lift or carry more than 10 pounds, and to change positions from sitting to standing for 10 minutes of every hour (Tr. 239).

On December 30, 1998, Dr. Hofmann filled out a work status form regarding Plaintiff, in which, he limited her to sedentary work for no more than four hours per day (Tr. 236). On January 14, 1999, Dr. Hofmann filled out another work status form, which limited Plaintiff to sedentary work for no more than six hours per day (Tr. 231). On February 3, 1999, Dr. Hofmann again filled out a work status form, limiting Plaintiff to sedentary work; however, Dr. Hofmann did not indicate an hour limitation to Plaintiff's workday (Tr. 227). In a follow up letter concerning the aforementioned February 3, 1999 assessment (presumably written to someone related to Plaintiff's worker's compensation carrier), Dr. Hofmann stated that, in his opinion, Plaintiff's sedentary work restrictions "appear[ed] to be permanent" (Tr. 465; *see also* Tr. 456).

On May 27, 1999, Dr. Hofmann reported that Plaintiff was prescribed Lortab (a narcotic pain medication) to alleviate her pain symptoms (Tr. 217).  Throughout the remainder of his treatment of Plaintiff (*i.e.* up to and including November 24, 1999), Dr. Hofmann continued to limit Plaintiff to sedentary work (*see* Tr. 199-226).

On September 16, 1999, Plaintiff was examined by, consultative examiner, Hung Tran, M.D. ("Dr. Tran") (Tr. 176-81).  Dr. Tran noted that Plaintiff had no difficulty getting on or off the exam room table and that, although she had pain from her neck down to her arms, she had no loss of motion (Tr. 178).  Dr. Tran additionally noted that Plaintiff refused to lift twenty pounds because she was instructed not to lift more than ten pounds by her treating physician (Tr. 178).

On October 5, 2000, Plaintiff presented to Michael T. Pulley, M.D. ("Dr. Pulley") for an evaluation of her left arm numbness (Tr. 411).  Dr. Pulley noted that Plaintiff was taking Lorcet (a narcotic pain medication) for pain (Tr. 412).  Dr. Pulley additionally noted that Plaintiff had a limited range of motion in her neck and reduced pin prick sensation on her left forearm down to her fingers (Tr. 413).  Dr. Pulley performed a nerve conduction study upon Plaintiff on October  16, 2000 (Tr. 415-18).  Dr. Pulley's comments concerning the results of the nerve conduction study were, in pertinent part, as follows:

> A minimally abnormal study with electrophysiologic abnormalities that may be consistent with chronic C6 radiculopathy.  This correlates with the patient's symptomatology and physical findings in which she has reduced biceps and brachioradialis reflexes and reduced sensation on the lateral forearm.  There does not appear to be any active component of this and therefore, no specific intervention is likely necessary for it.

(Tr. 416.)

Beginning in 1998, Ronald W. Dennie, M.D. ("Dr. Dennie") treated Plaintiff for chronic cervical and lumbar pain (*see* Tr. 286 and 401).  Upon examination on February 12, 2002, Dr. Dennie noted that Plaintiff continued to have "a good deal of pain" in her neck with spasm and limited range of motion (Tr. 400).  Dr. Dennie continued Plaintiff's treatment regimen of Roxicodone (a narcotic pain medication) (Tr. 400).

On April 15, 2002, magnetic resonance imaging ("MRI") scans were taken of Plaintiff's entire spine (Tr. 394-95).  The radiologist who read the results of Plaintiff's cervical MRI stated: "[t]he appearance of a disc herniation at the C6-7 level impinging on the thecal sac centrally. [. . . ]  Some effacement of the cervical cord at this level.  Clinical correlation is advised" (Tr. 395).

On April 22, 2002, Dr. Dennie reviewed the results of Plaintiff's aforementioned MRI and noted the results revealed a disc herniation at Plaintiff's C6 level that impinged the thecal sac centrally (Tr. 393).  Dr. Dennie performed a physical examination of Plaintiff, which revealed decreased sensation in the right C6 distribution and continued complaints of pain (Tr. 393).  On August 15, 2002, Dr. Dennie assessed Plaintiff's physical residual functional capacity ("RFC") (Tr. 401-05).  In his RFC assessment, Dr. Dennie stated that he had treated Plaintiff since 1998 and that, in his opinion, Plaintiff was not a malingerer (Tr. 401-02).   Dr. Dennie's RFC assessment restricted Plaintiff to sitting and standing/walking less than two hours total in an eight-hour workday, and lifting and carrying less than ten pounds occasionally (Tr. 403-04).[4]

---

[4] The Court notes that Dr. Dennie's restrictions would limit Plaintiff to less than sedentary work as defined by the Regulations. Specifically, Social Security Ruling 83-10, defines sedentary work as lifting no more than ten pounds at one time, with sitting required for at least six hours out of an eight-hour workday. SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

On July 22, 2002, Plaintiff was referred to Daniel S. Rowe, M.D. ("Dr. Rowe") for evaluation of intractable neck and lower back pain (Tr. 407-09). Dr. Rowe noted Plaintiff had been through a multitude of treatment options that included, but was no limited to, medications such as anti-inflammatories, muscle relaxants, anti-depressants, and "chronic opioid therapy," as well as physical therapy, acupuncture, and home traction (Tr. 407). Dr. Rowe mentioned that none of the aforementioned treatments were successful in alleviating Plaintiff's pain symptoms (Tr. 407). Dr. Rowe's diagnostic impression included a C6-7 cervical herniated disc with impingement of the thecal sac, twenty week intrauterine pregnancy, and opioid tolerance syndrome (Tr. 409). On August 5, 2002, Dr. Rowe stated that Plaintiff requested an increase in her pain medicine, which was denied due to her pregnancy (Tr. 406).

At her January 21, 2003 hearing, Plaintiff testified that she delivered a baby six weeks prior to the hearing by induced labor due to greatly increased pain and her mental state (Tr. 513-14). Plaintiff stated that her husband changed his work schedule to be at home during the day because she is unable to take care of her baby alone (Tr. 514 and 518). Plaintiff testified that she is in too much pain to properly care for her baby and that her husband and older daughter must help with household chores and cooking (Tr. 514-15). Plaintiff additionally stated that she must rest after only ten minutes of activity, such as loading her dishwasher (Tr. 515).

Plaintiff further stated that, since she was recently released from the care of her obstetrician, she planned on presenting to a neurosurgeon and a pain management specialist (Tr. 516). Plaintiff testified that she experiences persistent pain that radiates throughout her shoulders and that her left arm is so weak that it is hard for her to hold her

10

infant, who weighs approximately eight pounds (Tr. 516-17).  Plaintiff additionally stated that she does not type due to pain (Tr. 517).

At the August 20, 2003 supplemental hearing, Vocational Expert ("VE") Donna Mancini appeared and testified (Tr. 550-55).  The ALJ asked the VE to consider a hypothetical individual of the same age, education level, and work experience as Plaintiff with a physical RFC for light work,[5] occasional postural movements, and no climbing of ladders, ropes, or scaffolds. (551-52).  The ALJ stated that the hypothetical individual must avoid concentrated exposure to workplace hazards, cold temperatures, wetness and humidity, and is limited to simple repetitive work (Tr. 551-52).

The VE testified that, although the hypothetical individual could not perform any of Plaintiff's past relevant work, the hypothetical individual would retain the ability to perform the jobs of: (1) parimutuel ticket cashier; (2) blood donor unit assistant; (3) cafeteria attendant; and (4) sales attendant (Tr. 552-53). *See* 1 United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 211.467-018, 245.367-014, 311.677-010, 299.677-010 (4th Ed. 1991).

In a decision dated March 4, 2004, the ALJ denied Plaintiff's disability claim by virtue of finding, at Step Five of the sequential evaluation process, that Plaintiff retains the RFC to perform other jobs that exists in significant numbers in the national and local economy, *supra* (Tr. 306).

---

[5] According to Social Security Ruling 83-10, light work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday.  SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

**IV. Analysis**

Without addressing all of Plaintiff's arguments, the Court finds the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is, therefore, not supported by substantial evidence. Specifically, the Court's independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239, reveals the ALJ has misquoted and misconstrued the record evidence on numerous points. Thus, for the following reasons, the ALJ's decision is reversed and remanded.

First and foremost, the ALJ stated in his decision that "there is nothing in the evidence of record to suggest the claimant incapable a [sic] range of light work on a sustained basis" (Tr. 301). The Court notes the aforementioned statement is patently untrue. The record reveals that Plaintiff's treating physician, Dr. Hofmann, specifically limited Plaintiff to sedentary work and stated that, in his opinion, Plaintiff's sedentary work restriction was permanent (Tr. 200-39 and 465). Additionally, the record clearly reflects that Plaintiff's other treating physician, Dr. Dennie, limited Plaintiff to less than sedentary work (*see* Tr. 401-05).[6]

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583. While the ALJ may discredit the medical opinions of treating and examining physicians, he is required to state specific reasons for doing so, particularly with regards

---

[6] The Court notes that, although the ALJ stated that Dr. Zeal released Plaintiff to work with a limitation of no more than occasional lifting of ten to twenty pounds (which would imply that she is capable of light work) (Tr. 299), the Court is unable to locate this statement by Dr. Zeal in the record. State agency medical consultant, Robert Sury, M.D. ("Dr. Sury"), stated in his notes that Dr. Zeal made the aforementioned statement (Tr. 461); however, the record does not contain the statement by Dr. Zeal.

to the treating physicians' opinions, and these reasons must be supported by substantial evidence in the record. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).

In *Baker v. Barnhart*, the court ordered the case be remanded to the Commissioner where the ALJ had misstated the record and failed to address the physical limitations found by the plaintiff's treating physician. No. 03-C-2291, 2004 WL 2032316 (N.D. Ill. Sept. 9, 2004).[7] The Court finds *Baker v. Barnhart* is persuasive, given the facts of this case.

Second, the ALJ stated that Plaintiff's April 15, 2002 MRI "showe[d] a *possible* herniation at the C6-7 disc level but the radiologist reading the MRI recommended clinical correlation and that is not present in Dr. Dennie's treatment records" (Tr. 300) (*emphasis added*). Although Dr. Dennie's treatment records do not reflect that he ordered another MRI or any other additional tests, his treatment notes indicate he reviewed the April 15, 2002 MRI results and found the presence of a disc herniation at Plaintiff's C6 level (*see* Tr. 393). Specifically, Dr. Dennie stated: "MRI of the cervical spine reveals post surgical changes at C5-6. There is a herniation at the C6 level impinging the thecal sac centrally" (Tr. 393).

Additionally, Dr. Rowe reviewed the results of Plaintiff's April 15, 2002 MRI and found the presence of a cervical disc herniation at Plaintiff's C6 level (*see* Tr. 409). Dr. Rowe stated: "C6-7 cervical herniated nucleus pulposus with impingement of the thecal sac by MRI on April 15, 2002" (Tr. 409).

---

[7] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

Since the radiologist reviewing the MRI in question and two physicians have stated that the April 22, 2002 MRI results show a herniated cervical disc at Plaintiff's C6 level (Tr. 389, 393, 409), the Court finds the ALJ's statement that Plaintiff's April 15, 2002 MRI showed a "possible disc herniation" is a mis-characterization of the medical evidence of record that alone is cause for reversal.

Third, the ALJ stated that, since her July 24, 1998 surgery, Plaintiff has not required more aggressive treatments and has "primarily relied on non-narcotic pain medications for pain relief" (Tr. 299-300). While it is true that Plaintiff has not undergone any additional surgical procedures, Plaintiff's continued use of narcotic pain medications is well documented throughout the administrative record.

Specifically, Plaintiff's prescription records reflect that she has been prescribed a significant amount of opioid pain medication from February 1998 (the month of her initial injury) through August 5, 2002 (*see* Tr. 355-74).[8] Although, within the four year time period from February 16, 1998 to August 5, 2002, Plaintiff's prescription records reflect that Plaintiff has had several breaks in her opioid usage, the most recent medical records show that Plaintiff actually made a request for an increase in narcotic pain medications on August 5, 2002, which was denied by her doctor due to her pregnancy (Tr. 406). Additionally, the Court notes that Dr. Rowe described Plaintiff's use of narcotic pain medication as being "chronic" (Tr. 407).

---

[8] August 5, 2002 is the most recent date in the medical evidence of record that relates to Plaintiff's prescription medications.

Accordingly, and for the aforementioned reasons, the Court finds the ALJ's statement that Plaintiff has primarily relied on non-narcotic pain medication to be a mis-characterization of the evidence of record.

Fourth, the ALJ stated that Dr. Tran examined Plaintiff on a second occasion (after his September 16, 1999 evaluation, *supra*) and that "[a]lthough she [Plaintiff] appeared with a cane, she demonstrated the ability to walk without the cane" (Tr. 300). The Court, however, is unable locate the aforementioned statement by Dr. Tran in the administrative record. The only notes by Dr. Tran contained within the administrative record are from his September 16, 1999 examination of Plaintiff (Tr. 176-81).

While each of the aforementioned misstatements and/or mis-characterizations of the record when viewed individually may not constitute such error as to require reversal, the numerous misstatements mentioned above, taken as a whole, reveal an inaccurate review of the record and inadequate support in the record.

An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion. *Baker*, 2004 WL 2032316, at *8. The ALJ must also "sufficiently articulate" his or her assessment of the evidence to assure the court that they have considered the important evidence–so that the court may trace the path of the ALJ's reasoning to his or her conclusion. *Id.*

After review of the ALJ's opinion and the administrative record, the Court cannot find the ALJ has built the requisite accurate and logical bridge from the evidence to the conclusion. Accordingly, due to the aforementioned legal and factual errors of the ALJ, the Court does not find the decision of the ALJ is based on substantial evidence. Thus, the case must, once again, be reversed and remanded for further proceedings. The Court

15

recommends that this case be assigned to a different ALJ.

## V. Conclusion

For the foregoing reasons, the Court finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law.  The additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; consideration of the opinions of Plaintiff's examining and treating medical sources; consideration of the opinions of non-examining medical sources; re-evaluation of Plaintiff's subjective complaints of pain; and, if warranted, additional vocational expert testimony.

Furthermore, the ALJ shall accord proper weight to the testimony and statements of Plaintiff's treating physicians in accordance with the law of this circuit.  *See Lewis,* 125 F.3d at 1440-41*; Sharfarz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987).  If the ALJ finds reason to disregard the opinion of a treating or examining physician, he must provide specific reasons for doing so, and these reasons must be supported by substantial

evidence in the record.

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filled within fourteen (14) days of the Commissioner's final decision to award benefits.  *See* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a); *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida this  27th day of March, 2008.

Copies to all counsel of record
    and *pro se* parties, if any

*[signature: Thomas E. Morris]*
**THOMAS E. MORRIS**
United States Magistrate Judge

17